IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PAUL SULLIVAN,                          §
                                        §
      Plaintiff,                        §
                                        §
V.                                      §          No. 3:21-cv-915-S-BN
                                        §
CITY OF DALLAS, TEXAS and               §
JENNIFER NICEWANDER,                    §
                                        §
      Defendants.                       §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate

judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of

reference from United States District Judge Karen Gren Scholer. *See* Dkt. No. 1.

Defendant City of Dallas, Texas (the "City") has filed a motion for partial

dismissal of the Second Amended Complaint. *See* Dkt. No. 19. Plaintiff Paul Sullivan

filed a response, *see* Dkt. No. 24, and the City filed a reply, *see* Dkt. No. 25.

For the reasons explained below, the Court should grant the City's motion for

partial dismissal.

**Background**

The following facts are taken from the Second Amended Complaint, accepting,

for purposes of deciding this motion to dismiss, all well-pleaded facts as true and

viewing them in the light most favorable to Plaintiff.

Plaintiff was a City employee assigned to the Public Works Department,

primarily working in the area of streets. *See* Dkt. No. 18 at ¶¶ 8, 9. In 2018, Plaintiff was part of a team who make projections for street repairs for a five-year period. *See id.* at ¶ 10. The team determined the budget over the next five years for street repairs should be approximately $1.3 billion. *See id.* at ¶ 11. Plaintiff alleges that "a good portion of the City of Dallas' Public Works budget for which the approximately $1.3 billion funds was sourced included federal funds." *Id.* at ¶ 12.

After receiving the team's in-house estimate, the City retained a private pavement management consulting firm, named Fugro, to estimate a budget for street repairs for the same five-year period. *See id.* at ¶ 13. Fugro estimated the budget should be $1.8 billion. *See id.* The City ultimately accepted Fugro's estimate. *See id.* at ¶ 15.

"Plaintiff began stating that this was a fraudulent means of obtaining an additional half billion dollars to the Public Works budget.…" *See id.* at ¶ 14. From June 18, 2018 through March 2019, Plaintiff made this allegation at least ten times through email or verbally to his direct supervisors Jennifer Nicewander, Manager of Pavement Management Project, and Robert Perez, Director of Public Works. *See id.* at ¶ 14.

From December 2018 through March 2019, Nicewander and Perez "engaged in efforts to suppress information on Plaintiff's performance evaluation." *Id.* at ¶ 16.

On March 5, 2019, Plaintiff sent a letter to Nicewander, Perez, and Cosmin Spiridon reporting race discrimination under Title VII and informing them of an imminent filing of an EEOC complaint. *See id.* at ¶ 17.

On March 7, 2019, Plaintiff was issued a Letter of Counseling "in retaliation for reporting race discrimination." *Id.* at ¶ 18.

On March 8, 2019, "Plaintiff took information reflecting fraud and mishandling of City of Dallas funds to repair streets in the amount of $300,000,000.00 over a five (5) year period to the Dallas City Council and the Federal Bureau of Investigation [("FBI")]." *Id.* at 19.

On April 1, 2019, Nicewander and Perez placed Plaintiff on suspension. The stated reason for his suspension was his communications with the Dallas City Council "regarding his assertions that the alteration in the City's proposed budget was fraudulent." *Id.* In the notice-of-suspension letter, Nicewater explained:

> On June 13, 2018, during a meeting with you, Robert Perez, Director, and Don Spear, [] Business Partner, I instructed you to contact me with project concerns before contacting Mr. Perez directly. You were also instructed to copy me on emails when contacting Mr. Perez within Pavement Management, and to follow your chain of command. You agreed that would you do this this moving forward. Furthermore, on March 7, 2019, you received a letter of counseling for failing to follow these instructions. At that time, the importance of following these instructions was once again explained to you.
>
> Nevertheless, on March 8, 2019, during working hours, you once again disregarded my instructions by directly emailing Councilmembers, bypassing myself, Mr. Perez, and the City Manager's Office. In your emails, you falsely claimed that PCI data was not calculated correctly and that I was willfully and intentionally misleading executive staff. You made these false claims despite the fact that on June 18, 2018, after we spoke with the Fugro representative, you and your fellow GIS Analyst II Cosmin Spiridon both agreed that the blended PCI data provided by Fugro conformed to the standard methodology for this calculation.

*Id.*

On August 7, 2019, Plaintiff submitted a Family Medical Leave Act ("FMLA") request for accommodation under the Americans with Disabilities Act ("ADA"). Plaintiff's disability is being HIV positive. When acute, his HIV positive status qualifies as a significant health condition under the FMLA. *See id.* at ¶ 22, 23.

Plaintiff was terminated on October 3, 2019. *See id.* at ¶ 24. Plaintiff alleges that the City violated the First Amendment (in a claim under 42 U.S.C. § 1983), the False Claims Act ("FCA"), the ADA, and the FMLA by terminating him because he requested an accommodation of his disability, in retaliation for his March 5, 2019 letter reporting race discrimination in violation of Title VII, for making an FMLA request for time off, and for reporting criminal waste of City of Dallas funds with respect to repair of streets to the Dallas City Council and the FBI. *See id.* Plaintiff alleges the stated reason for his termination – a reduction in force – was pretextual.

Plaintiff then filed this lawsuit.

In his live pleading, the Second Amended Complaint, Plaintiff asserts claims against the City for First Amendment retaliation under 42 U.S.C. § 1983, retaliation under the FCA and FMLA, and discrimination and retaliation based on race in violation of 42 U.S.C. § 1981 under 42 U.S.C. § 1983.

The City filed a motion for partial dismissal of all of Plaintiff's claims except the FMLA retaliation claim. *See* Dkt. No. 19.

In response to the motion for partial dismissal, Plaintiff abandoned his Section 1983 and 1981 claims against the City, and so all that remains is the City's request to dismiss the FCA retaliation claim.

**Legal Standards**

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or

formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief — including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the "factual allegations" in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. That rationale has even more force in this case, as the Court "must construe the pleadings of pro se litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim. *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint. *Id.*

In addition, it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss,

-7-

in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice). And [t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion under Rule 12(b)(6) when deciding such a motion, where, although [w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties, the United States Court of Appeals for the Fifth Circuit has held that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion. *Turnage v. McConnell Techns., Inc.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam) (internal quotation marks and citations omitted).

## Analysis

Under the False Claims Act, a private person can sue any person who has submitted false claims for payment to the United States Government. *See* 31 U.S.C. §§ 3729(a), 3730(b)(1). The Act gives a private cause of action to a whistleblower employee who is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms of conditions of employment" in response to their acts done "in furtherance of an action under this section or other efforts to stop 1 or more violations of" the FCA. 31 U.S.C. § 3730(h)(1).

"To establish a claim under § 3730(h), a party must show (1) that she was engaged in protected activity with respect to the False Claims Act; (2) that her

-8-

employer knew she was engaged in protected activity; and (3) that she was discharged because she was engaged in protected activity." *Thomas v. ITT Educ. Serv., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) (per curiam) (citing *Robertson v. Bell Helicopter Textron, Inc*, 32 F.3d 948, 951 (5th Cir 1994)).

The City asserts the Second Amended Complaint fails to plead a plausible claim for relief against the City for FCA retaliation because Plaintiff does not adequately allege that he reported the misuse of federal funds.

Plaintiff alleges that he took issue with a budget estimate performed by an outside vendor, Fugro, and "began stating that this was a fraudulent means of obtaining an additional half billion dollars to the Public Works budget," Dkt. No. 18 at ¶¶ 13-14; that he made these statements to "his direct supervisors," *id*. at ¶ 14; and that he then later "took information reflecting fraud and mishandling of City of Dallas funds" to the Dallas City Council and to the FBI, *id*. at ¶ 19.

The first element of an FCA retaliation claim requires a plaintiff to engage in protected activity with respect to the FCA. A violation under the FCA requires the submission of false claims for payment to the United States Government, *see* 31 U.S.C. §§ 3729(a), 3730(b)(1) – not a local government. But Plaintiff's allegations of wrongdoing relate to the potential mishandling of "City of Dallas funds." Dkt. No. 18 at ¶¶ 19, 20, 24.

In his Second Amended Complaint, Plaintiff adds the general statement that "a good portion of the City of Dallas Public Works budget for which the approximately $1.3 billion funds was sourced included federal funds." *Id*. at ¶ 12.

This allegation is inconsistent with his other allegations regarding his FCA retaliation claim.

Plaintiff alleges that Fugro inflated the Department of Public Works's street repair budget from $1.3 billion over five years to $1.8 billion over 5 years and that the inflated budget of $1.8 billion was adopted. *See id*. at ¶ 13, ¶ 15. But, in paragraph 12 of the Second Amended Complaint, Plaintiff states that the approved budget was only $1.3 billion – the number that Plaintiff supported.

Plaintiff also includes links to the City's approved Annual Budget for fiscal year 2019-20 ("2019 Budget") and the City's Fiscal Year 2018-2019 Adopted Budget to support his allegation that the budget for street repairs included federal funds. He does not include page references to the portions of these voluminous documents to support his general allegation. Although these documents are referenced in the Complaint and may be central to his claims, Plaintiff must do more than include links and expect the Court to rummage through the documents. And the undersigned will not consider the more specific references and factual allegations that Plaintiff makes in his response when they are not included in the Second Amended Complaint.

Accordingly, Plaintiff fails to state a claim for a violation of the False Claims Act. Even though Plaintiff has amended this claim three times, it appears that he still has not pleaded his best case, and the claim should be dismissed without prejudice.

## Recommendation

The Court should grant Defendant City of Dallas' Motion for Partial Dismissal of the Second Amended Complaint [Dkt. No. 19], dismiss as abandoned Plaintiff Paul Sullivan's claims against the City for First Amendment retaliation under 42 U.S.C. § 1983 and race-based discrimination and retaliation under 42 U.S.C. § 1981 and §1983, dismiss without prejudice Plaintiff's claim for False Claims Act retaliation, and grant Plaintiff 21 days from the date of any order adopting these Findings, Conclusions, and Recommendation in which to file an amended complaint as to his False Claims Act retaliation claim and order that, if Plaintiff fails to do so, his False Claims Act retaliation claim will be dismissed with prejudice without further notice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge

that are accepted or adopted by the district court, except upon grounds of plain error.

*See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 29, 2022

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE