IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PAUL SULLIVAN,                          §
                                        §
          Plaintiff,                    §
                                        §
V.                                      §          No. 3:21-cv-915-S-BN
                                        §
CITY OF DALLAS, TEXAS and               §
JENNIFER NICEWANDER,                    §
                                        §
          Defendants.                   §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Karen Gren Scholer. *See* Dkt. No. 1.

Defendant Jennifer Nicewander has filed a motion to dismiss Plaintiff's Second Amended Complaint. *See* Dkt. No. 27. Plaintiff Paul Sullivan filed a response, *see* Dkt. No. 33, and Nicewander filed a reply, *see* Dkt. No. 37.

For the reasons explained below, the Court should grant Nicewander's motion to dismiss.

## Background

The following facts are taken from the Second Amended Complaint, accepting, for purposes of deciding this motion to dismiss, all well-pleaded facts as true and viewing them in the light most favorable to Plaintiff.

Plaintiff was a City of Dallas employee assigned to the Public Works Department, primarily working in the area of streets. *See* Dkt. No. 18 at ¶¶ 8, 9. In 2018, Plaintiff "was involved and participating in a team of workers" who make budget projections for street repairs for a five-year period. *Id*. at ¶ 10. The team estimated the budget over the next five years for street repairs should be approximately $1.3 billion. *See id*. at ¶ 11. Plaintiff alleges that "a good portion of the City of Dallas' Public Works budget for which the approximately $1.3 billion funds was sourced included federal funds." *Id*. at ¶ 12.

After receiving the team's in-house estimate, the City retained a private pavement management consulting firm, named Fugro, to estimate a budget for street repairs for the same five-year period. *See id*. at ¶ 13. Fugro estimated the budget should be $1.8 billion. *See id*.

"Plaintiff began stating that this was a fraudulent means of obtaining an additional half billion dollars to the Public Works budget…." *See id*. at ¶ 14. From June 18, 2018 through March 2019, Plaintiff made this allegation at least ten times through email or verbally to his direct supervisors Jennifer Nicewander, Manager of Pavement Management Project, and Robert Perez, Director of Public Works. *See id*. at ¶ 14.

From December 2018 through March 2019, Nicewander and Perez "engaged in efforts to suppress information on Plaintiff's performance evaluation." *Id*. at ¶ 16.

On March 5, 2019, Plaintiff sent a letter to Nicewander, Perez, and Cosmin Spiridon reporting race discrimination under Title VII and informing them of an imminent filing of an EEOC complaint. *See id*. at ¶ 17.

On March 7, 2019, Plaintiff was issued a Letter of Counseling. *See id*. at ¶ 18.

On March 8, 2019, "Plaintiff took information reflecting fraud and mishandling of City of Dallas funds to repair streets in the amount of $300,000,000.00 over a five (5) year period to the Dallas City Council and the Federal Bureau of Investigation [("FBI")]." *Id*. at 19.

On April 1, 2019, Nicewander and Perez placed Plaintiff on suspension. The stated reason for the suspension was his communications with the Dallas City Council "regarding his assertions that the alteration in the City's proposed budget was fraudulent." *Id*. In the notice-of-suspension letter, Nicewater explained:

> On June 13, 2018, during a meeting with you, Robert Perez, Director, and Don Spear, [] Business Partner, I instructed you to contact me with project concerns before contacting Mr. Perez directly. You were also instructed to copy me on emails when contacting Mr. Perez within Pavement Management, and to follow your chain of command. You agreed that would you do this moving forward. Furthermore, on March 7, 2019, you received a letter of counseling for failing to follow these instructions. At that time, the importance of following these instructions was once again explained to you.
>
> Nevertheless, on March 8, 2019, during working hours, you once again disregarded my instructions by directly emailing Councilmembers, bypassing myself, Mr. Perez, and the City Manager's Office. In your emails, you falsely claimed that PCI data was not calculated correctly and that I was willfully and intentionally misleading executive staff. You made these false claims despite the fact that on June 18, 2018, after we spoke with the Fugro representative, you and your fellow GIS Analyst II Cosmin Spiridon both agreed that the blended PCI data

provided by Fugro conformed to the standard methodology for this calculation.

*Id.* at ¶ 20.

Plaintiff was terminated on October 3, 2019. *See id.* at ¶ 24.

Plaintiff then filed this lawsuit against the City. *See* Dkt. No. 3. He added Nicewander as an individual defendant in his Second Amended Complaint. Plaintiff alleges that the stated reason for his termination – a reduction in force ("RIF") – was pretextual and that the City and Nicewander "used a RIF to terminate an employee that it could not have terminated given the Plaintiff's appeal rights as a civil servant for" the City. *Id.* at ¶ 25. Plaintiff asserts claims against Nicewander for First Amendment retaliation under 42 U.S.C. § 1983 and discrimination and retaliation based on race in violation of 42 U.S.C. § 1981 under 42 U.S.C. § 1983. *See id.*

Nicewander filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Plaintiff's claims against her. *See* Dkt. No. 27. Nicewander asserts that Plaintiff's First Amendment retaliation claim should be dismissed because Plaintiff fails to plead a plausible claim for relief, that she is entitled to qualified immunity, and that the claim is barred by the statute of limitations. Nicewander asserts that the discrimination and retaliation claims brought under Sections 1981 and 1983 should be dismissed because Plaintiff has not plead a cognizable claim for race discrimination or retaliation, that she was not a party to Plaintiff's employment

contract, that she is entitled to qualified immunity, and that the claims are barred by the statutes of limitations.

**Legal Standards**

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true,

it is "not bound to accept as true a legal conclusion couched as a factual allegation."
*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or
formulaic recitation of the elements of a cause of action, supported by mere
conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss"
under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that
the claims asserted have "substantive plausibility" by stating "simply, concisely,
and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v.
City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P.
8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna
Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to
dismiss, the complaint does not need detailed factual allegations, but it must
provide the plaintiff's grounds for entitlement to relief  including factual
allegations that, when assumed to be true, raise a right to relief above the
speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6)
motion turns on the sufficiency of the "factual allegations" in the complaint." *Smith
v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S.
Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal
of a complaint for imperfect statement of the legal theory supporting the claim
asserted," *Johnson*, 135 S. Ct. at 346. That rationale has even more force in this

case, as the Court "must construe the pleadings of pro se litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

322 (2008) (directing courts to ▯ consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice▯).

## Analysis

I.    <u>Plaintiff's claims against Nicewander are barred by the statute of limitations.</u>

On August 19, 2019, Plaintiff was notified that his employment with the City would terminate on October 3, 2019 as part of a RIF. *See* Dkt. No. 28 at 3. The parties agree that the statute of limitations for Plaintiff's Section 1981 and 1983 claims against Nicewander were triggered by the RIF, but they disagree as to whether the claims accrued when Plaintiff received notice of the RIF or when it took effect.

Under Fifth Circuit case law, the limitations period begins to run when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). Both the United States Supreme Court and the Fifth Circuit Court of Appeals have determined that a claim accrues on the date notice of termination was given, not the effective date of termination. *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981); *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455-56 (5th Cir. 2011).

"The limitations period begins when an employee is unambiguously informed of an immediate or future termination." *Phillips,* 658 F.3d at 456. Plaintiff contends

that the notice of termination was ambiguous because it stated that he was eligible for "[a]ssistance in job search, including consideration and priority referral for available City positions for which you qualify," and that the City "will assist you in your search for other employment within the City of Dallas." Dkt. No. 28 at 3.

> The Fifth Circuit has determined that similar language was unambiguous:
>
> Appellant first argues that the date of AT&T's notice stating that he was "at risk of termination" should not be used as the commencement for the 300 day filing period because it did not clearly state that he was to be terminated. We disagree. Supreme Court authority makes clear that the limitations period for filing starts when the employer communicates an adverse employment decision to the employee, and not when the employee feels the consequences of the discriminatory act. The fact that AT&T made procedures available by which employees who were to be terminated might seek other employment with the Company does not change that result.

*Chester v. Am. Telephone and Telegraph Co.*, 68 F.3d 470, 470 (5th Cir. 1995).

Contrary to Plaintiff's other arguments, the continuing violations doctrine does not apply to discrete acts of discrimination under Section 1981, *see Pegram v. Honeywell*, 361 F.3d 272, 280 (5th Cir. 2004), and termination is a discreet act, *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Nor is equitable tolling warranted for Plaintiff's Section 1983 claims. *See Bogus v. Harris Cnty. Dist. Attorney*, 830 F. App'x 746, 747 (5th Cir. 2020) (holding that, although the determination of when a Section 1983 claim accrues is determined by federal law, the Texas statute of limitations and equitable tolling principles apply). Even on a motion to dismiss, Plaintiff has the burden to show that equitable tolling is warranted, *see Martinez v. Hidalgo Cnty., Tex.*, 727 F. App'x 77, 78 (5th Cir. 2018),

and must allege facts showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," *Perez v. Physician Assistant Bd.*, 765 F. App'x 960, 963 (5th Cir. 2019). Plaintiff fails to plead any facts that would support equitable tolling. Instead, he argues that limitations should be tolled because he was not sure he would suffer any damages and hoped to apply for and receive another job for the City.

Accordingly, Plaintiff's claims against Nicewander accrued when he received notice of termination on August 19, 2019. *See* Dkt. No. 28 at 3. The statute of limitations for Section 1981 and 1983 claims is two years. *See Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988).

Plaintiff sued Nicewander on September 17, 2021. *See* Dkt. No. 18. Consequently, Plaintiff's claims against Nicewander are barred by the statute of limitations. And on this basis alone, all of Plaintiff's claims against Nicewander should be dismissed with prejudice.

II.    <u>Nicewander is entitled to qualified immunity.</u>

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson,* 659 F.3d 359, 370 (5th Cir. 2011). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs,* 475 U.S. 335, 341 (1986), and courts will not deny immunity unless "existing precedent ... placed the statutory or constitutional question beyond

debate," *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 735 (citation omitted).

> A.    Nicewander is entitled to qualified immunity on the First Amendment retaliation claim.

Nicewander asserts she is entitled to qualified immunity on the First Amendment retaliation claim because it was not clearly established whether Plaintiff's communications with the City Council were protected speech at the time he was terminated.

In a case with facts very similar to this one, the Fifth Circuit determined that a government employee facing a First Amendment retaliation claim is entitled to qualified immunity when it is unclear whether an employee was speaking pursuant to his job duties or as a citizen. *See Benes v. Puckett*, 602 F. App'x 589, 595 (5th Cir. 2015). The Fifth Circuit explained that "[t]his is precisely the situation in which qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741)); *see also Gunaca v. Texas,* 65 F.3d 467, 474 (5th Cir. 1995) (explaining that public officials facing First Amendment retaliation lawsuits are often entitled to qualified immunity "because 'reasonable government officials, knowing only that they must not infringe on [employee free speech rights], would not necessarily know

just what conduct was prohibited'" (quoting *Noyola v. Tex. Dept. of Human Res.,* 846 F.2d 1021, 1025 (5th Cir.1988)).

The same holds true here. Even if the Court determines that Plaintiff's statements were private speech, Plaintiff has not shown that it was clearly established that his speech constituted protected citizen speech when he was terminated. *See Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022) ("Overcoming qualified immunity requires showing clearly established law supporting the plaintiff's claim, and that demands that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." (cleaned up)). Accordingly, Nicewander is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

      B.    Nicewander is entitled to qualified immunity on the race-based <u>discrimination and retaliation claims.</u>

Nicewander asserts that she is entitled to qualified immunity on the race-based discrimination and retaliation claims because it has not been clearly established whether individual government officials may be held liable under Section 1981. And dismissal based on qualified immunity is appropriate when the law is ambiguous as to liability. *See Culbertson v. Lykos*, 790 F.3d 608, 627 (5th Cir. 2015) (dismissing claim against an individual defendant based on qualified immunity when, at the time of plaintiff's termination, it was unsettled as to whether a person who was not the final decision maker could be held liable).

As recently as 2018, the Fifth Circuit noted that it was undecided as to whether Section 1981 claims were cognizable against government officials in their individual capacities. *See Jones v. City of Houston,* 756 F. App'x 341, 347 n.6 (citing *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 338 (5th Cir. 2003) (recognizing tension in Fifth Circuit case law regarding the liability of individual defendants who are not parties to the employment contract)); *see also Escamilla v. Elliott*, ___ F. App'x ___, No. 21-50931, 2022 WL 2387354, at *2 n.2 (5th Cir. July 1, 2022) ("Because we affirm the district court's conclusion that Escamilla failed to show pretext under *McDonnell Douglas*, we do not reach Elliott's argument that Escamilla cannot prevail on her Section 1981 claims against Elliott in her individual capacity."); *Johnson v. Halstead*, 916 F.3d 410, 419 n.3 (5th Cir. 2019) (declining to address an argument "that it is not clearly established that a section 1981 retaliation claim can be brought against a municipal official as opposed to the municipality itself" and noting that the defendant's "failure to raise the 'individual defendant' question also means that this opinion is not precedent on that issue").

Plaintiff does not allege that Nicewander was a party to his employment contract with the City. And, since the law is unsettled as to whether individual defendants are otherwise subject to Section 1981 liability, Nicewander is entitled to qualified immunity, and Plaintiff's Section 1981 claims against her should be dismissed.

III.    Plaintiff's claim for First Amendment retaliation under 42 U.S.C. § 1983 <u>should be dismissed.</u>

A.    <u>Plaintiff fails to adequately plead that he spoke as a citizen.</u>

To establish a Section 1983 claim for employment retaliation related to speech, a public employee must allege that "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (citation omitted).

"The second element of the First Amendment retaliation analysis encompasses two requirements: an employee must have spoken as a citizen and that speech must have been on a matter of public concern." *Hawkland v. Hall*, 860 F. App'x 326, 331 (5th Cir. 2021). The first requirement is a threshold inquiry into whether an employee was speaking as a citizen or "pursuant to [the employee's] official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *see also Hurst v. Lee Cnty.*, 764 F.3d 480, 484 (5th Cir. 2014) ("This court has characterized that requirement—that he be speaking as a citizen on a matter of public concern—as a threshold layer to the second prong of the retaliation test.").

If an employee's speech was made pursuant to his official duties, he is not entitled to First Amendment protection even if he spoke on a matter of public concern. *See Anderson*, 845 F.3d at 592; *see also Howell v. Town of Ball*, 827 F.3d 515, 522-23 (5th Cir. 2016) ("[I]nstead of asking only if the speech at issue was on a matter of public concern, a court must first decide whether the plaintiff was

speaking as a citizen disassociated with his public duties."). An employee who does not speak "as a citizen on a matter of public concern … has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti*, 547 U.S. at 418.

Nicewander contends that Plaintiff fails to plead that he spoke as a citizen.

Plaintiff alleges that he "was involved and participating in a team of workers who make projections for City of Dallas street repairs for a (5) five year period," Dkt. No. 18 at ¶ 10; that he, as part of a team from the Public Works Department, came up with a 5-year budget estimate, *see id*. at ¶ 11; that the Public Works Department brought in an outside consultant, who came up with a higher five-year budget estimate, *see id*. at ¶ 13; that he disagreed with the consultant's estimate and raised the issue with Nicewander, the manager of the project, and Robert Perez, the Public Works Director, on numerous occasions, *see id*. at ¶ 14; and that he then emailed the Dallas City Council regarding miscalculations to Public Work's proposed street budget, *see id*. at ¶ 20. He also alleges that he took information reflecting fraud and mishandling of City of Dallas funds for street repairs to the FBI, *see id*. at ¶ 19, but there are no allegations that Nicewander was aware of his communications with the FBI.

Plaintiff argues that, "when speech is made 'to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen.'"

*See Foerster v. Bleess,* No. 20-20583, 2022 WL 38996, at *3 (5th Cir. Jan. 4, 2022) (quoting *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008)). But no single factor is controlling, and some reporting to an outside agency may be unprotected. *See id.* (determining that police chief's report to mayor and city council was unprotected, despite police chief claiming that speech to mayor and council was outside of his chain of command). For example, sharing concerns with someone outside the chain of command about an issue that is "part and parcel" of the employee's regular job duties is not protected speech. *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007); *see also Harrison v. Lilly*, 854 F. App'x 554 (5th Cir. 2021) (holding that speech that was "part and parcel" of employee's job duties and emanated from her views as an employee and not a citizen was not protected). Nor is speech that was not part of the employee's regular job duties and done in an unauthorized manner protected if there is "no relevant analogue to speech by citizens." *Nixon v. City of Houston*, 511 F.3d 494, 498 (5th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 424).

Employee speech, made within or outside the chain of command and which would otherwise be unprotected from being the basis for discipline, is not transformed into protected speech by continuing to express those same concerns to certain external parties. *See Foerster,* 2022 WL 38996, at *3 (citing *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 278 (5th Cir. 2020); *Anderson*, 913 F.3d at 478). If the employer could discipline the employee for the "initial speech," the employee

cannot "escape the discipline of his employer for breach of his employee duties by going public with the same speech." *Anderson*, 913 F.3d at 479.

Measured against these standards, Plaintiff fails to allege any facts from which the Court could infer that Plaintiff spoke as a citizen and not an employee when he made his speech to the City Council.

B.      Plaintiff fails to adequately allege that his speech precipitated the adverse employment action.

In a First Amendment retaliation claim against an individual defendant, the plaintiff must plead that the individual defendant's "animus against [his] exercise of First Amendment rights is a link in the causal chain that [led] to [his] firing." *Jones v. Hoseman*, 812 F. App'x 235, 239 (5th Cir. 2020) (quoting *Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018)). And so Plaintiff must allege sufficient facts from which the Court could draw a plausible inference that the RIF was causally connected to his speech and that Nicewander was involved in the decision to eliminate his position. *See id*. at 240. He fails to do so.

Plaintiff alleges that his March 9, 2019 email to the Dallas City Council was protected speech, *see* Dkt. No. 18 at ¶ 41; that he was suspended due to that speech on April 1, 2019, *see id*. at ¶ 20; and that he was terminated in a pretextual RIF on October 3, 2019, *see id*. at ¶¶ 24, 25. He pleads only conclusory allegations regarding the RIF and pleads nothing regarding Nicewander's role in the RIF – such as how she would or could have caused Plaintiff's position to be eliminated in the RIF.

-17-

IV.    Plaintiff's 42 U.S.C. § 1981 claims for racial discrimination and retaliation <u>should be dismissed.</u>

Plaintiff asserts claims against Nicewander for discrimination and retaliation based on race in violation of 42 U.S.C. § 1981 under 42 U.S.C. § 1983. *See* Dkt. No. 18 at ¶ 69. Because Section 1983 and Title VII are parallel causes of action, the evaluation of discrimination and retaliation claims is essentially the same for individual actions brought under sections 1981 and 1983 and Title VII. *See Lauderdale v. Tex. Dep't of Crim. Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007).

Title VII makes it unlawful for an employer to discriminate against an individual based on race or retaliate against him for engaging in protected activity. *See* 42 U.S.C. § 2000e–2; *Thornton v. Dallas Indep. Sch. Dist.,* No. 13–cv–3012–P, 2014 WL 46398, at *3 (N.D. Tex. Jan. 6, 2014). Claims under Title VII are analyzed through the framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). *See McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007). Under that framework, a plaintiff must establish a prima facie case of discrimination before the case may proceed. *See id*. To establish a prima facie claim of racial discrimination, a plaintiff must show that he (1) was a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of his protected class or that others outside of his protected class and similarly situated were treated more favorably. *See id*. To establish a prima facie claim of retaliation, a plaintiff

must demonstrate that (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *See id.* at 557.

The Fifth Circuit has cautioned that a plaintiff is not required to make a showing of each prong of the prima facie test at the pleading stage. *See Raj v. Louisiana State Univ.,* 714 F.3d 322, 331 (5th Cir.2013) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510–12 (2002)). "While a plaintiff is not required to plead a prima facie case based on discrimination and retaliation at the pleading stage for purposes of Rules 8 and 12(b)(6), she must set forth allegations that would enable the court to reasonably infer that his employer or employment agency discriminated against him in violation of Title VII and took the alleged adverse employment action because she engaged in protected activity." *Thornton,* 2014 WL 46398, at *3 (quoting *Nieman v. Hale,* No. 3:12-cv-2433-L, 2012 WL 3204990, at *4 (N.D. Tex. Aug. 8, 2012) (internal citation omitted)).

A.   Plaintiff fails to state a plausible claim for racial discrimination.

Plaintiff alleges that Nicewander discriminated against him by "working together" with the City to terminate his employment contract based on his race. *See* Dkt. No. 18 at ¶ 69. But Plaintiff fails to plead any facts supporting the first, second, and fourth elements of a racial discrimination claim. He does not plead that he is in a protected category with respect to race, that he was qualified for his position with the City, or that he was replaced by someone outside the protected

group. *See* Dkt. No. 18 at ¶¶ 68-73. Accordingly, Plaintiff's Section 1981 claim for racial discrimination should be dismissed, and, because Plaintiff does not respond to these arguments in his response to the motion to dismiss, Plaintiff apparently has pleaded his best case, and his Section 1981 discrimination claim be dismissed with prejudice.

B.    <u>Plaintiff fails to state a plausible claim for race-based retaliation.</u>

Plaintiff alleges that Nicewander retaliated against him by "working together" with the City to terminate his employment contract because he informed management and others that he was filing a race discrimination claim. Dkt. No. 18 at ¶ 69. More specifically, Plaintiff alleges that, "[o]n or about March 5, 2019, Plaintiff sent a letter to Robert Perez, Jennifer Nicewander, and Cosmin Spiridon reporting race discrimination under Title VII race discrimination and informing them of an imminent filing with the EEOC." *Id.* at ¶ 17. "Two days later, on or about March 7, 2019, Plaintiff was issued a Letter of Counseling in retaliation for reporting race discrimination," *id.* at ¶ 18, and this alleged retaliation was a partial cause of his suspension on April 1, 2019, *see id.* at ¶ 20. Plaintiff also alleges that he was terminated on October 3, 2019, "in retaliation for his letter on March 5, 2019, reporting race discrimination under Title VII." *Id.* at ¶ 24.

These legal conclusions are insufficient to state a claim, and Plaintiff alleges no facts from which the Court could infer a causal connection between the protected activity reflected in the March 5, 2019, letter, and the adverse employment action

when he was notified that he would be terminated. Accordingly, Plaintiff's Section 1981 retaliation claim should be dismissed.

## Recommendation

The Court should grant Defendant Jennifer Nicewander's Motion to Dismiss Plaintiff's Second Amended Complaint [Dkt. No. 27], dismiss with prejudice Plaintiff Paul Sullivan's claims against Jennifer Nicewander, and dismiss Jennifer Nicewander as a party in this case.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 29, 2022

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE