IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PAUL SULLIVAN, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | No. 3:21-cv-915-S-BN |
| § | |
| CITY OF DALLAS, TEXAS and § | |
| JENNIFER NICEWANDER, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Karen Gren Scholer. Dkt. No. 1.

Defendant City of Dallas, Texas has filed a Motion to Exclude Portions of Andrew Daker's Expert Reports. *See* Dkt. No. 85. Plaintiff Paul Sullivan filed a response, *see* Dkt. No. 88, and the City filed a reply, *see* Dkt. No. 95.

For the reasons explained below, the Court grants in part and denies in part the motion. *See Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 346 n.2 (5th Cir. 2020) (the admissibility of an expert report is "a non-dispositive matter," which can be "'referred to a magistrate judge to hear and decide'" under Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A)).

## Background

The factual background is discussed in detail in the findings, conclusions and

recommendations entered in this case and will not be repeated here.

Simply stated, Sullivan was employed as a GSI Analyst II in the City's Public Works Department. His employment was terminated as part of a reduction in force ("RIF").

During a restructuring of the Public Works Department, which led to the RIF, the City eliminated both of its GIS Analyst II positions, one of which was Sullivan's. It also created a GIS Analyst III position, which was filled by another employee on August 12, 2019, several months before the RIF.

On October 2, 2019, Sullivan asked his direct supervisor to consider him for the GIS Analyst III position. He was informed that there was no open GIS Analyst III position at that time.

Sullivan sued the City, alleging that he was terminated in retaliation for engaging in alleged protected activity in violation of the Family Medical Leave Act and the Fair Claims Act.

Sullivan designated Andrew Dakers as an expert witness to testify regarding his economic damages and lost earnings.

Dakers was asked to calculate the financial impact of Sullivan's alleged wrongful termination under three scenarios. First, Dakers was to assume that Sullivan was promoted to the GIS Analyst III position and was paid at the maximum salary of the published salary range for the position, with annual raises based on the anticipated inflation rate. Second, he was to make the same assumption, but without annual raises. And, third, he was to assume that Sullivan would receive the same

salary and fringe benefits that he would have received without termination.

The City moves to exclude the portions of Daker's opinions based on an assumed promotion. The City contends that those opinions are unreliable because they are based on the incorrect assumptions that Sullivan asserted a failure-to-promote claim, that Sullivan would have been promoted to the GIS Analyst III position, and that Sullivan would have received the highest listed salary for the GIS Analyst III position.

## Legal Standards

> Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence. Rule 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the expert's knowledge will assist the trier of fact, and (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case."

*VeroBlue Farms USA Inc. v. Wulf, No.* 3:19-CV-764-X, 2023 WL 348963, at *6 (N.D. Tex. Jan. 20, 2023) (quoting *Ramos v. Home Depot Inc.*, No. 3:20-cv-1768-X, 2022 WL 615023, at *1 (N.D. Tex. Mar. 1, 2022) (cleaned up)).

"In its gatekeeping role, the Court determines the admissibility of expert testimony based on Rule 702 and [*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993),] and its progeny." *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018), *aff'd*, No. 3:11-cv-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018). Under Rule 702 and *Daubert*,

> [a]s a gatekeeper, this Court must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony.

> The party offering the expert testimony has the burden of proof, by a preponderance of evidence, to show that the testimony is reliable and relevant.

*Ramos*, 2022 WL 615023, at *1 (cleaned up). And "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Applying this analytical framework under Rule 702 and *Daubert*, a "court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 759 (N.D. Tex. 2021).

"First, an expert must be qualified. Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training or education." *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2022 WL 3019795, at *5 (N.D. Tex. July 29, 2022) (cleaned up). "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Holcombe*, 516 F. Supp. 3d at 679-80 (cleaned up); *accord Arnold v. Allied Van Lines, Inc.*, No. SA-21-CV-00438-XR, 2022 WL 2392875, at *18 (W.D. Tex. July 1, 2022) ("Testimony regarding first-hand,

historical perceptions constitutes lay, not expert, opinion testimony."). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Aircraft Holding*, 2022 WL 3019795, at *5 (cleaned up).

And, if the expert is qualified, "Rule 702 charges trial courts to act as gate-keepers, making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Expert testimony must be both relevant and reliable to be admissible." *Hall v. State*, No. CV H-21-1769, 2022 WL 2990912, at *4 (S.D. Tex. July 28, 2022) (cleaned up).

> Expert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue. Federal Rule of Evidence 401 further clarifies that relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without evidence" and "is of consequence in determining the action."

*Id.* (cleaned up). "Relevance depends upon whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). "To be relevant, the expert's reasoning or methodology [must] be properly applied to the facts in issue." *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) (cleaned up).

"When performing [the required gate-keeping Rule 702 and *Daubert*] analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). "Assisting the trier of fact means the trial judge ought to insist that a proffered

expert bring to the jury more than the lawyers can offer in argument," but "the helpfulness threshold is low: it is principally ... a matter of relevance." *Id.* at 293-94 (cleaned up).

As to reliability, the required "analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia," and "mandates that expert opinion be grounded in the methods and procedures of science." *Jacked Up*, 291 F. Supp. 3d at 801 (cleaned up). "Expert evidence that is not reliable at each and every step is not admissible." *Jacked Up*, 807 F. App'x at 348 (cleaned up). "Expert testimony is reliable if the reasoning or methodology underlying the testimony is scientifically valid." *Ramos*, 2022 WL 615023, at *1 (cleaned up).

"Such testimony must be more than subjective belief or unsupported speculation." *Id.* (cleaned up). "In other words, this Court need not admit testimony that is connected to existing data only by the ipse dixit [– that is, an unproven and unsupported assertion resting only on the authority –] of the expert." *Id.* (cleaned up). "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Holcombe*, 516 F. Supp. 3d at 687 (cleaned up).

"Experts are permitted to rely on assumptions when reaching their opinions," but "those assumptions must have some factual basis in the record and an underlying rationale." *Jacked Up*, 291 F. Supp. 3d at 807-07 (cleaned up). "But there is no requirement that an expert derive his opinion from firsthand knowledge or observation." *Id.* at 801 (cleaned up). More specifically, "[e]xperts are permitted to

assume the fact of liability and opine about the extent of damages," and "[a]n expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible." *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. CV H-16-2746, 2018 WL 1877015, at *8 (S.D. Tex. Apr. 19, 2018) (cleaned up).

And Federal Rule of Evidence 703 "permit[s] an expert witness to base his opinion on 'facts or data ... that the expert has been made aware of or personally observed' and to opine [and based his opinion] on inadmissible evidence if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.' " *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 269 & n.10 (cleaned up). More specifically, courts have concluded that, although a party's damages expert "did not personally observe the facts or data in [another expert's report], as a damages expert, he may rely on hearsay, including other expert reports, in forming his opinions." *ENGlobal*, 2018 WL 1877015, at *11 (cleaned up).

Still, "Rule 702 and *Daubert* require an expert witness independently to validate or assess the basis for his or her assumptions," and "[t]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable," which "requires some objective, independent validation of the expert's methodology." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"Although the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to

receive that opinion. In the words of the Third Circuit, the suggestion that the reasonableness of an expert's reliance on facts or data to form his opinion is somehow an inappropriate inquiry under Rule 702 results from an unduly myopic interpretation of Rule 702 and ignores the mandate of *Daubert* that the district court must act as a gatekeeper." *Jacked Up*, 807 F. App'x at 348 (cleaned up). "In some circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality, but to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.* at 348-49 (cleaned up). "The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"The Court normally analyzes questions of reliability using the five nonexclusive factors known as the *Daubert* factors, [which are: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community]." *Ramos*, 2022 WL 615023, at *1 & n.11 (cleaned up). "But these factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kim v. Nationwide Mut. Ins. Co.*, No. 3:21-cv-345-D, 2022 WL 2670393, at *5 (N.D. Tex. July 11, 2022) (cleaned up). "The point of this inquiry

is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Holcombe*, 516 F. Supp. 3d at 674 (cleaned up).

"The Court also does not need to admit testimony based on indisputably wrong facts." *Ramos*, 2022 WL 615023, at *1 (cleaned up). "The Fifth Circuit has recognized that [t]he *Daubert* reliability analysis applies to, among other things, 'the facts underlying the expert's opinion,' " and "an opinion based on insufficient, erroneous information, fails the reliability standard." *Jacked Up*, 291 F. Supp. 3d at 802 (cleaned up). "And although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, the existence of sufficient facts ... is in all instances mandatory." *Id.* (cleaned up).

But, "[i]n conducting its analysis, the Court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology." *Ramos*, 2022 WL 615023, at *1 (cleaned up). A motion to exclude is not properly based on an "objection that goes to whether [the proffered expert's] opinion is correct, not whether it is reliable," where "[t]he proponent need not prove to the judge that the expert's testimony is correct, but," rather, "by a preponderance of the evidence that the testimony is reliable." *Aircraft Holding*, 2022 WL 3019795, at *8 (cleaned up). "Even when a court rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable." *United States v. Hodge*, 933

F.3d 468, 477 (5th Cir. 2019), as revised (Aug. 9, 2019) (cleaned up). And, so, "[w]hen the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *ENGlobal*, 2018 WL 1877015, at *8 (cleaned up).

The Court cannot accept arguments that "urge[ ] the Court to establish an unattainable goalpost, essentially arguing that each item of expert testimony is unreliable insofar as it fails to conclusively prove [the expert testimony's proponent's] theory of its case or an element of a claim or defense," and thereby "confus[e] admissibility with sufficiency, and sufficiency with certainty." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). That "is not the standard for admissibility," or "even the standard for success on the merits," and "[i]t is not the Court's role, in the context of a *Daubert* motion, to judge the conclusions that an expert's analysis generates; the ultimate arbiter of disputes between conflicting opinions is the trier of fact." *Id.*

"If, however, there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered, the court may exclude the testimony as unreliable." *Kim*, 2022 WL 2670393, at *5 (cleaned up). For example, "the Court may exclude [an expert witness's] analysis if the studies that he relies on are so dissimilar to the facts presented that [the expert witness's] opinions cannot be sufficiently supported by the studies." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). "But the notion that expert testimony is only admissible to the extent that it is based on studies of identical individuals under identical circumstances would not

only turn the 'flexible' inquiry envisioned under Rule 702 on its head, but such rigid constructions of reliability and relevance would defeat the very purpose of expert testimony: to help the trier of fact understand and evaluate the evidence." *Id.* at 676-77 (cleaned up).

The "evidentiary gates [provided by Rule 702 and *Daubert*] exist to keep out error that may impermissibly affect the jury" and "to protect juries from unreliable and irrelevant expert testimony." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 264, 268. But "[t]he court's inquiry is flexible in that [t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). And, "[p]articularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role – the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration. Thus, [w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, the rejection of expert testimony is the exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (cleaned up).

And "[t]he Fifth Circuit has noted that [a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration," and, "[a]ccordingly, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

means of attacking shaky but admissible evidence." *Ramos*, 2022 WL 615023, at *3 (cleaned up). Generally, an opposing party's "doubts about the bases for [an expert's] opinions do not render his opinions so unsupported as to create 'too great an analytical gap' between the evidence he relies on and his opinions." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up).

## Analysis

The City contends that Daker's opinions based on an assumed promotion should be excluded because they are unreliable. The City argues that those opinions are not based on sufficient facts or data because they are based on the incorrect assumptions that Sullivan asserted a failure-to-promote claim, Sullivan would have been promoted to the GIS Analyst III position, and Sullivan would have received the highest salary in the range for the GIS Analyst III position.

First, the City argues that Daker's calculations are not based on sufficient facts or data because Sullivan did not plead a claim for failure to promote. In his deposition, Daker testified that he assumed that Sullivan asserted a failure-to-promote claim. He further testified that that would make a difference in his calculations because he could not base his calculations on a similarly-situated position if Sullivan did not assert failure to promote.

Because Dakers testified that he would not have used the wages for a GIS Analyst III as part of his damages calculations if he had known Sullivan did not allege a failure-to-promote claim, his calculations based on the wages for a GIS Analyst III are not based on sufficient facts or data and should be excluded.

Second, the City argues that Daker's calculations are not based on sufficient facts or data because, at the time that Sullivan sought the GIS Analyst III position, there were no openings. Dakers testified that the damages calculation based on the GIS Analyst III position would only be applicable if this was a position that Plaintiff "was most likely to move into." But the evidentiary record establishes that, at the time of Sullivan's termination, there was no open GIS Analyst III position. Thus, Daker's report provides no basis for asserting that Sullivan was likely to receive a promotion for a position that was not open at the time of his termination. And Daker admits that, without the likelihood of this promotion at the time, there is no basis for the assumption that Plaintiff's damages would include lost wages for the position.

Third, the City argues that Daker's calculations are not based on sufficient facts or data because Daker had no basis to choose the highest salary in the range for the GIS Analyst III position. When he was terminated, Sullivan's salary was $57,700. The listed salary range for the GIS Analyst III position was between $50,201 and $72,720. Dakers testified that he chose the highest amount in that range for his calculations because Sullivan was later rehired in a different department at a salary exceeding the maximum for the GSI Analyst III position.

Daker's use of the maximum salary for the GSI Analyst III position is based on evidence in the record and objections to those calculations go to the weight, not the admissibility, of his damages calculations.

**Conclusion**

The Court grants in part and denies in part Defendant City of Dallas's Motion

to Exclude Portions of Andrew Daker's Expert Report [Dkt. No. 85].

SO ORDERED.

DATED: July 15, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE